OWEN, Circuit Judge,
dissenting:
I would affirm Moore’s sentence and hold that the district court correctly construed the sentencing guidelines when it determined that Moore’s crime involved at least 300 victims. The district court did not err in applying the corresponding 6-level enhancement. The majority opinion’s reading of Application Note 4(C) to § 2B1.1 is not supported by the language of that Note and leads to absurd results.
I
Moore pled guilty to and was convicted of making, possessing, and uttering a forged and counterfeit security. The district court found that Moore and her co-defendants caused an actual loss of $91,332.22, and intended a loss of $115,884.74 as a result of a scheme that spanned more than a year and involved the theft of mail. The district court calculated the advisory sentencing guidelines range of imprisonment to be 70 to 87 months and sentenced Moore to 63 months of imprisonment, three years of supervised release, and $91,332.22 in restitution.
The relevant facts are undisputed: Moore admits that mail was stolen from at least six United States Post Office collection boxes on different dates in different locations.[1] She contends that the district court erred in its interpretation of Application Note 4(C)(ii) when the court concluded that each mailbox “shall be considered to have involved at least 50 victims”[2] and calculated the number of victims to be 300.
The plain language of the Guidelines contemplates this calculation.[3] Application Note 4(C)(ii)(I) provides a special rule for determining the number of victims in a cáse involving United States Postal Service receptacles, including collection boxes:
*168 (C) Undelivered United States Mail.—
(i) In General. — In a case in which undelivered United States mail was taken, or the taking of such item was an object of the offense, or in a case in which the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, “victim” means (I) any victim as defined in Application Note 1; or (II) any person who was the intended recipient, or addressee, of the undelivered United States mail.
(ii) Special Rule. — A case described in subdivision (C)(i) of this note that involved—
(I) A United States Postal Service relay box, collection box, delivery vehicle, satchel, or cart, shall be considered to have involved at least 50 victims.
(II) A housing unit cluster box or any similar receptacle that contains multiple mailboxes, whether such receptacle is owned by the United States Postal Service or otherwise owned, shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box or similar receptacle.[4]
The district court reasoned that because Moore’s offense involved six collection boxes, the Guidelines direct that each mailbox “shall be considered to have involved at least 50 victims.”[5] This is the correct interpretation of the Guidelines. The Note says that “a [emphasis added] United States Postal Service ... collection box ... shall be considered to have involved at least 50 victims.”[6] If “a ... collection box” “shall be considered to have involved at least 50 victims,”[7] then six collection boxes are considered to have involved at least 300 victims (6 x 50). The majority opinion mistakenly focuses on the words “A case,” reasoning that no more than 50 victims can be considered to have been involved in “A case” involving a mail collection box, regardless of the number of collection boxes or other receptacles involved in the case.
The majority opinion’s construction of the Guidelines leads to patently absurd results. What if a case involved thefts from 51 mailboxes, or 75 mailboxes, or 100 mailboxes? The majority opinion says that the “at least 50 victims” phrase in subsection (I) of the Special Rule is a ceiling on the number of victims that can be “presumed,” regardless of the number of collection boxes from which mail was stolen in a case. In a case involving 75 mailboxes, the Government must prove, according to the majority opinion, that at least one item of mail was in each mailbox beyond the 50th mailbox to exceed a 50-victim “presumption,” and only the number of items of mail actually proven to have been in each mailbox will be used to establish the number of victims beyond 50 victims. This is not the intent of the Guidelines.
In amending the commentary to include the collection-box provision, the Commission explained its reasoning as follows:
A special rule is provided for application of the victim enhancement for offenses involving United States mail because of (i) the unique proof problems often attendant to such offenses, (ii) the frequently significant, but difficult to *169 quantify, non-monetary losses in such offenses, and (iii) the importance of maintaining the integrity of the United States mail.[8]
The Guidelines define a victim as “any person who was the intended recipient, or addressee, of the undelivered United States mail,”[9] and as the Commission recognizes, law enforcement will rarely, if ever, be able to identify all of the intended recipients affected by the theft of mail from a mail collection box or similar receptacle. The Commission therefore drafted Application Note 4 to say that if “a case” involved “a United States Postal Service relay box, collection box, delivery vehicle, satchel, or cart” the case “shall be considered to have involved at least 50 victims.” [10] That language does not foreclose increasing the number of victims that “a case” “shall be considered to have involved” [11] if that case involved more than “a” “relay box, collection box....” If “a case” involved more than one of the identified mail receptacles or transporters, or it involved a combination of one or more of the receptacles or transporters enumerated in (C)(ii)(I), then the directive that “at least 50 victims” shall be considered to have been involved with respect to a receptacle or transporter requires multiplying the number of receptacles or transporters in “a case” by 50 to determine the number of victims “considered to have [been] involved.”
The correct interpretation of this application note is all the more clear when its companion provision in subsection (II) regarding “a housing unit cluster box or any similar receptacle” is considered. Subsection (II) immediately follows the collection box section and the “shall be considered to have involved at least 50 victims” language. The cluster-box provision says:
(II) A housing unit cluster box or any similar receptacle that contains multiple mailboxes, whether such receptacle is owned by the United States Postal Service or otherwise owned, shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box or similar receptacle.[12]
The number of victims is presumed to equal the number of individual mailboxes in the cluster. There is symmetry between subsection (I) and (II), when properly interpreted. A mailbox within a cluster box is for the use of an individual or a household. The receptacles or transporters described in (I) are used to collect or carry the mail for many individuals or households. The directive that each central mail collection box, such as the collection boxes at issue in this case, or that each delivery truck or mail satchel shall be considered to have at least 50 victims is entirely congruent with the treatment of unit cluster boxes. The majority opinion improperly places a constraint on the number of victims that can be presumed under subsection (I), ignoring the parallels between it and subsection (II).
The housing unit cluster-box provision was adopted in 2004, after the Commission had originally promulgated provisions dealing with collection boxes. In adopting the cluster-box provision, the Commission explained that “[t]he amendment provides a presumption that a theft from such a cluster box involves the number of victims corresponding to the number of mailboxes *170 contained in the cluster box.” [13] The Commission also explained that “[t]he same rationale for the original special rule applies to this expansion,” and that rationale was:
(i) unique proof problems in that once entry is gained to such a cluster box and mail is removed, it is difficult to determine the number of persons from whom mail was stolen; (ii) the frequently significant, but difficult to quantify, non-monetary losses; and (iii) the importance of maintaining the integrity of the United States mail service. These reasons are equally valid whether the mail receptacle is owned by the United States Postal Service or is privately owned.[14]
A scheme in which six cluster boxes were breached, with 50 individual mailboxes in each cluster, would have 300 presumed victims. Under the majority opinion’s interpretation of the collection-box provision, however, a scheme — like the one in which Moore participated — in which six collection boxes were breached, would have a maximum of 50 presumed victims. Such disparate results cannot be reconciled with the Commission’s identical rationale for adopting both provisions.
The majority opinion speculates that this disparity can be explained by the difference between cluster boxes and the receptacles listed in the collection-box provision, i.e., that “the number of individual boxes in a cluster ... allows a more case-specific determination of the number of victims.”[15] This explains why the number of victims per cluster is counted by individual boxes while the number of victims per collection box (or other receptacle) is counted by a predetermined amount, such as 50 victims per receptacle. It does not, however, account for the inconsistency between counting the number of individual mailboxes in each cluster, on the one hand, and setting a presumed number of victims that remains constant regardless of the total number of receptacles involved in the scheme, on the other. The majority opinion maintains that a presumption of “at least 50 victims” for a case involving more than one collection box “leaves the door open to proof of additional victims when and if such proof is available.” [16] But, as the Commission noted, the very purpose behind adopting the directive in the application note is that such proof is all too often not available.
In a footnote, the majority opinion suggests that if the Commission “had meant for the same presumption to apply to cluster boxes as the one applicable to collection boxes ... it could have (and presumably would have) simply amended sub-sub-paragraph I by adding ‘cluster boxes’ to the list.”[17] But the Commission did not intend for “the same presumption to apply to cluster boxes as the one applicable to collections boxes.” The majority opinion correctly explains that because there are an identifiable number of individual mailboxes within a housing unit cluster box or any similar receptacle that contains multiple mailboxes, a reasonable presumption may be made that the number of victims corresponds to the number of mailboxes. It would make no sense to treat a cluster box the same as a collection box and to deem that there were at least 50 victims involved with regard to a cluster. The cluster might contain ten mailboxes, or it might contain 200; but the number of mailboxes within a cluster would be readily ascertainable. There is no reason to *171 choose “at least 50” as the number of victims that shall be considered to be involved with regard to a cluster box. There is a reason to choose “at least 50 victims” with regard to each collection box. At any given moment on any given day, the number of items of mail in a public mail receptacle such as a collection box can vary widely, and often, there is no means of proving how many addressees were victims of the theft. That is why the Commission did not “simply amend[ ]”[18] the Special Rule in the application note by adding “cluster boxes” to the list that contains collection boxes. The Commission determined that “at least 50 victims” was a reasonable number of victims to ascribe to the theft of mail from a public receptacle like a collection box when the number of victims is rarely ascertainable. There is no need for a directive like the one applicable to a collection box when a cluster box is involved. Apparently, the majority opinion and I agree that the Commission had a good reason for treating a collection box differently from a cluster box. We do disagree, however, as to how subsection (C)(ii)(I) is to be interpreted when “a case” involves theft from more than one collection box.
The majority opinion’s strained reading of the Guidelines provides for the same enhancement even if the criminal scheme spanned months or years and involved breaches of hundreds of public collection boxes. This is not a reasonable reading of § 2B1.1 and its application notes.
I would affirm the district court’s common-sense interpretation of the Guidelines. I therefore respectfully dissent.

. Moore’s brief concedes that "thefts occurred during the following times,” and sets forth the following description of seven thefts:
Arlington PO which occurred in April 2010 Oakwood PO which occurred in September 2010
Alta Mesa PO which occurred in November 2010
Handley PO which occurred in January 2011
Trinity PO which occurred in May 2011
8th A venue [sic] PO which occurred in June 2011
7th Street PO which occurred in July 2011.

. U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.4(C)(ii)(I) (2011).

. United States v. Serfass, 684 F.3d 548, 551 (5th Cir.2012) ("When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result.”).

. U.S.S.G. § 2B1.1 cml. n.4(C).

. Id.

. Id.

. Id.

. U.S. Sentencing Guidelines Manual app. C, vol. II, at 173 (2003).

. U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.4(C)(i)(II) (2011).

. Id. § 2B1.1 cmt. n.4(C)(ii).

. Id.

. Id. § 2B1.1 cmt. n.4(C)(ii)(II).

. U.S. Sentencing Guidelines Manual app. C, vol. Ill, at 133 (2011).

. Id. (internal citation omitted).

. Ante at 166-67.

. Ante at 165-66 (emphasis in original).

. Ante at 166 n. 17.

. Id.